FILED

2016 Mar-22  PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **PATRICIA REYNOLDS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 4:14-CV-02038-RDP** |
| | } | |
| **CAROLYN W. WILSON,** | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Patricia Reynolds brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.       Proceedings Below

On September 6, 2011, Plaintiff protectively filed an application for disability and DIB, alleging that her disability began on January 4, 2009. (R. 197-198). The Social Security Administration initially denied Plaintiff's application on October 31, 2011. (R. 150-151, 165). On December 28, 2011, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. 170-171). This request was granted (R. 179-184), and Plaintiff received a video hearing before ALJ Angela L. Neel on February 1, 2013. (R. 57-77). Plaintiff waived her right to representation on February 1, 2013. (R. 60, 196). On March 29, 2013, the ALJ

determined that Plaintiff was not under a disability, as defined by the Act from January 4, 2009 through Plaintiff's last insured date, September 30, 2009. (R. 39-52). After the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision (R. 1-3), the ALJ's decision became the final decision of the Commissioner, and, therefore, a proper subject for this court's review.

## II.    Statement of Facts

Plaintiff was 47 years old at the time of her alleged disability onset date and 48 years old on the date she was last insured. (R. 50). She alleges disability due to lumbar spinal stenosis, arthritis, a ruptured disc, disc bulges, a Tarlov cyst on the spine, Patello-femoral pain syndrome in the left knee, sponge kidney disease, hypothyroidism, and degenerative disc disease. (R. 46, 64, 214). Plaintiff has an eleventh grade education and has partially completed her GED. (R. 50, 64, 215). As of 2000, Plaintiff had completed specialized job training in "various types of payroll programs, computer skills, employee training, HR, all aspects having to do with public relations and upper management in the retail business." (R. 215). In the fifteen years prior to Plaintiff's alleged disability onset date, Plaintiff worked for various companies as a cashier, sales clerk, customer service clerk, personnel manager, and assembler. (R. 50, 69-70, 226-232). In Plaintiff's most recent job she worked as a cashier and night manager until early January 2009. She would run the register, sweep and mop, stock the shelves, unload boxes, assist customers, clean the bathroom and freezer, and close the store. (R. 66, 227).

Once Plaintiff stopped working in January 2009, she would complete various household chores depending on her level of pain each day. (R. 67, 236). During the hearing, Plaintiff testified that she experiences daily back, joint, and hip pain, is fatigued from being in pain all day, and suffers chronic anxiety. (R. 64-68). However, Plaintiff has not received any mental

health treatment.  (*Id*.).  A Vocational Expert ("VE") testified during the hearing that, throughout the relevant January through September 2009 timeframe, a person such as Plaintiff could not perform her past work but could perform other sedentary, unskilled jobs, such as a charge account clerk, an order clerk, and a stringing machine tender. (R. 71-72).  The VE explained that a number of jobs existed in the national economy that such a person could have performed during the relevant period. (R. 72).

In Plaintiff's Function Report from October 2011, Plaintiff reported taking medication to help her sleep at night because of her pain and that she occasionally needs help with buttons, zippers, or pulling a shirt over her head. (R. 235).  Plaintiff prepares meals for herself, tries to go outside daily, does her own grocery shopping, and drives (although she cannot drive or ride for long distances). (R. 236-237).  Additionally, she talks to her sister and her friend on the phone daily and visits her friend about once a week. (R. 238).  Plaintiff claims that she does not lift over fifteen to twenty pounds and that squatting, bending, kneeling, standing, sitting, and walking for long periods cause her knee or back pain. (R. 239).  In her 2011 Function Report, Plaintiff wrote that she can walk fifty to one hundred feet when medicated before resting for five minutes. *Id.*

Plaintiff's medical history prior to January 2009 includes a reported anterior cervical discectomy and fusion due to a ruptured disc in 2001 (R. 47, 370), visits in 2003 and 2004 to Georgia Pain Physicians along with Atlanta Neurological and Spine Institute due to complaints of pain in her low back and left leg (R. 124-132, 298-302, 306-321), and visits in 2007 and 2008 to Dr. Henry Born. (R. 355-367).  An August 2004 MRI of Plaintiff's lumbar spine revealed mild disc desiccation in the L4-5 disc space without cord or nerve root compromise. (R. 315-316).  In September 2004, neurosurgeon Dr. Christopher Edwards explained that, although Plaintiff did

have some disc desiccation, he did not think it was "enough to warrant surgical intervention." (R. 309).

When Plaintiff began visiting Dr. Henry Born, her chief complaint was back pain. (R. 367).  A month later, Dr. Born explained that Plaintiff was "stable" and "happy" due to her new medication regimen that did not include any narcotics. (R. 366).  Dr. Born first noted that Plaintiff had pain on range of motion in her lumbosacral spine in March 2008; however, he otherwise found her to be "stable and . . . doing fairly well." (R. 362).  In August 2008, Plaintiff requested narcotics from Dr. Born in the event she had a severe back problem. (R. 358).  Dr. Born noted that Plaintiff was "fairly well controlled" and prescribed some narcotics. *Id.*  In November 2008, Plaintiff was found to be "stable" but with worsening arthritis and "slowly worsening" problems. (R. 355).

Plaintiff's alleged disability onset date is January 4, 2009, the date she stopped working. (R. 76, 199, 205).  Between January 4, 2009 and September 30, 2009, the last date Plaintiff was insured, Plaintiff continued to have regular check-ups with Dr. Born. (R. 349-354).  On January 8, 2009, Dr. Born noted that Plaintiff had "pain on range of motion and point tenderness" around her knees and that Plaintiff was "on her feet all day." (R. 354).  On March 9, 2009, Dr. Born explained that "[t]here is nothing much new with [Plaintiff]" and that she "probably has degenerative arthritis." (R. 353).  At Plaintiff's next visit on May 5, 2009, Dr. Born stated that Plaintiff was "stable" and "on a regimen that seems to be helping." (R. 352).  Dr. Born again found Plaintiff to be "stable" on July 1, 2009. (R. 350).  On August 27, 2009, Dr. Born treated Plaintiff's tendonitis at her right elbow and noted that all "her bones and joints hurt." (R. 349).

Following Plaintiff's last insured date of September 30, 2009, Plaintiff next visited Dr. Born on October 26, 2009. (R. 348).  At this point, she had returned to a stable condition. *Id.*

Plaintiff continued to see Dr. Born regularly through 2013. (R. 115-122, 332-348).  Throughout the remainder of 2009 and 2010, Plaintiff remained in a stable condition (R. 339-340, 342, 344, 347) and occasionally showed signs of improvement (R. 339, 344).  Her chief complaint during this time period concerned occasional flare ups with her right elbow which was relieved with shots of cortisone and potentially caused by Plaintiff's quilting. (R. 340, 342-343, 345).  In April 2011, Dr. Born diagnosed Plaintiff with chronic anxiety due to her sister's cancer diagnosis. (R. 335-336).  Plaintiff began to complain about back pain again in July 2011. (R. 331).  In October 2011, Dr. Born noted that Plaintiff complained of chronic back pain for the past four months and had a few kidney stones (although the stones did not appear to be causing Plaintiff pain). (R. 332).

In December 2011, a bone density study revealed that Plaintiff had osteopenia in her hips and lumbar spine and a moderate to severe increased risk of fracture. (R. 393).  Dr. Gary Kwan treated Plaintiff for her kidney stones in February 2012. (R. 104, 399-405).  In May 2012, Dr. Born noted that Plaintiff's severe pains were worsening and planned to do a CT scan of Plaintiff's neck and back. (R. 117).  Plaintiff's June 2012 MRI of her lumbar spine revealed "[d]egenerative changes of all the lumbar discs distal to L1-2" and "[l]eft lateral recess stenosis at L4-5 due to disc bulging." (R. 417).  The MRI of her cervical spine found "no evidence of disc herniation or cervical spinal stenosis." (R. 418).

Dr. Sathyan Iyer examined Plaintiff in September 2012 and found Plaintiff to have "[l]ower back pain with some restricted range of motion suggestive of degenerative joint and disc disease of the lumbar spine" along with a history of degenerative disc disease of the cervical spine, osteopenia, and hypothyroidism. (R. 370-372).  Dr. Iyer noted that, in Plaintiff's current condition, "she may have impairment of function involving bending, lifting, and overhead

5

activities" but "does not have limitation of functions involving sitting, standing, walking, handling, hearing, or speaking." *Id.* In September 2012, an MRI of Plaintiff's hips found no significant abnormalities. (R. 384).

On November 14, 2012, Dr. Born completed a residual function capacity form concerning Plaintiff. (R. 78-83). Dr. Born opined that Plaintiff would not be able to return to work and that constant sitting, standing, and walking aggravate her medical conditions. (R. 82).

Following the ALJ's decision, Plaintiff submitted additional medical records to the Appeals Council. (R. 7-33, 103-142). This new evidence includes 2003 and 2004 treatment notes from Georgia Pain Physicians (R. 123-132), supplementary documentation from Dr. Kwan's 2012 kidney stone treatment (R. 103-113, 133-142), ongoing 2012 and 2013 treatment notes from Dr. Born (R. 27-33, 114-122), 2014 treatment notes from Piedmont Family Medicine (R. 15-24), and 2014 treatment notes from orthopedic surgeon Dr. Morton Rickless (R. 9-14). After Plaintiff was asked to no longer return to Dr. Born's clinic because of a "fuss with [his] staff," Plaintiff began using Dr. David Lee Smith of Piedmont Family Medicine as her primary care provider. (R. 18). Dr. Smith saw Plaintiff in April 2014 and July 2014 and diagnosed her with hypothyroidism, abdominal tenderness, chronic pain syndrome, anxiety, hyperlipidemia, and drug dependence. (R. 15-20). Dr. Morton treated Plaintiff from May 2014 through July 2014 and diagnosed her with a displaced lumbar disc and possible anxiety. (R. 9-14).

## III.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is

work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ made an initial determination that Plaintiff last met the insured status requirements of the Act on September 30, 2009. (R. 44).  Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 4, 2009 (her alleged onset date of disability) through her last insured date, September 30, 2009. *Id.*  The ALJ then decided that, through Plaintiff's last date insured, Plaintiff's degenerative disc disease of the cervical spine status post fusion, lumbar spinal stenosis, degenerative arthritis, and history of osteopenia constituted severe impairments because this combination of impairments have significantly limited and are likely to continue to significantly limit Plaintiff's ability to perform basic work activities. *Id.*  The ALJ also concluded that Plaintiff's complaints of anxiety, hypothyroidism, recurrent kidney stones, and tobacco abuse are non-severe impairments, explaining that the evidence did not show that these impairments caused any significant basic work limitations. (R. 44-45).  Overall, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (R. 45).

The ALJ found that, through the date last insured, Plaintiff had the RFC to perform less than the full range of sedentary work, and that she could carry out simple instructions, and make simple work-related decisions. (R. 45-46).   After determining Plaintiff's RFC, the ALJ concluded that Plaintiff "was unable to perform any past relevant work" through the date last insured; however, she also determined Plaintiff was capable of performing a significant number of other jobs in the national economy during that period. (R. 50)  Based upon these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act, from January 4, 2009, through September 30, 2009, the date Plaintiff was last insured. (R. 51).

## IV.     Plaintiff's Argument for Reversal

On appeal, Plaintiff makes the following arguments: (1) the Appeals Council failed to properly review new medical evidence and improperly failed to remand the ALJ's decision (Pl.'s Mem. 20-26); (2) the Appeals Council did not properly consider the opinion of Dr. Born, Plaintiff's treating physician (Pl.'s Mem. 21-24, 33-34); (3) the ALJ failed to protect the rights of a *pro se* claimant and fully develop the record (Pl.'s Mem. 26-30); (4) the ALJ failed to use the proper pain standard when evaluating Plaintiff's claims and to state adequate reasons for finding Plaintiff not credible (Pl.'s Mem. 30-33); (5) the ALJ's decision was not based on substantial evidence when considering new evidence submitted to the Appeals Council (Pl.'s Mem. 33-34); and (6) the ALJ's finding that Plaintiff has the RFC to perform less than sedentary work was not based on substantial evidence. (Pl.'s Mem. 34-36).

## V.     Standard of Review

The issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence and that both the ALJ and the Appeals Council applied correct legal standards.

### A. The Appeals Council Properly Considered Plaintiff's Additional Evidence.

Plaintiff contends that the Appeals Council improperly failed to review medical records submitted following the ALJ's decision. (Pl.'s Mem. 20). Further, Plaintiff alleges that the Appeals Council discounted these newly-submitted records because they were dated after the ALJ's decision. *Id.* Plaintiff is incorrect. The Appeals Council considered Plaintiff's additional evidence but found that it did not provide a basis for changing the ALJ's decision. (R. 1-2).

The Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.970(b)). "Whether evidence is 'new, material, and chronologically relevant' is a question of law subject

to *de novo* review." *Clough v. Soc. Sec. Admin., Comm'r*, 2016 WL 66843, at *1 (11th Cir. 2016). Chronologically relevant evidence "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §404.970(b). If there is a reasonable possibility that new evidence would change the administrative result, the new evidence is material. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

In this case, the additional medical records Plaintiff submitted to the Appeals Council include 2003 and 2004 treatment notes from Georgia Pain Physicians, 2012 treatment notes from Dr. Kwan, 2012 and 2013 treatment notes from Dr. Born, 2014 treatment notes from Dr. Smith, and 2014 treatment notes from Dr. Rickless. (R. 7-33, 103-142). Notably, because Plaintiff's alleged disability onset date is January 4, 2009, and last insured date is September 30, 2009, this new evidence must relate to that fairly narrow 2009 timeframe in order to be considered chronologically relevant. *See* 20 C.F.R. §404.970(b). But the new evidence does not. Further, even if this new evidence was chronologically relevant to Plaintiff's alleged 2009 disability, it is not material because it does not create a "reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

To begin, the supplemented treatment notes from Georgia Pain Physicians add little to record. The record already includes other 2003 and 2004 treatment notes, and the ALJ duly considered those. (R. 47, 298-321). Similarly, a significant portion of the records from Dr. Kwan's treatment of Plaintiff's kidney stones in 2012, over three years after Plaintiff's alleged disability onset date, were included in the record that the ALJ considered. *Compare* (R. 105-108, 113, 136-139) *with* (R. 401-405). In addition, Dr. Morton's and Dr. Smith's 2014 treatment notes do not provide opinions as to Plaintiff's medical condition in 2009. (R. 9-24).

11

Plaintiff contends that Dr. Born's statement on December 19, 2013 should have been more carefully considered by the Appeals Council. (Pl.'s Mem. 21). However, Dr. Born's 2013 statement only notes that Plaintiff should not do "any heavy work or lifting." (R. 33). That statement does not relate to any 2009 restriction and, in fact, makes no mention of Plaintiff's condition as of 2009. (R. 33). Further, Dr. Born's assessment of Plaintiff's RFC on November 14, 2012, which the ALJ actually considered, provides a more extensive analysis of Dr. Born's opinion of Plaintiff's medical conditions. (R. 49, 276-281). Because none of Plaintiff's additional evidence provides "objective medical evidence [in areas] which the ALJ previously had found to be wanting," *Hyde*, 823 F.2d at 459, the Appeals Council correctly found that these records do not affect the ALJ's decision. (R. 1-2).

### B.   Both the ALJ and the Appeals Council Properly Considered the Opinions of Plaintiff's Treating Physician, Dr. Born.

Plaintiff contests the weight the Appeals Council accorded to the opinions of Dr. Born, who served as Plaintiff's treating physician from 2007 through 2013. (Pl.'s Mem. 21, 33). Dr. Born provided two separate opinions on Plaintiff's disability status: one on December 19, 2013 and one on November 14, 2012. (R. 33, 276-281). As previously discussed, the Appeals Council appropriately reviewed Dr. Born's December 19, 2013 statement, which concluded that Plaintiff was not prohibited from performing sedentary work. (R. 33). The court concludes that Dr. Born's November 14, 2012 opinion was properly considered by the ALJ and properly reviewed by the Appeals Council.

Among other relevant factors, when considering how much weight to afford to a medical opinion, the ALJ should consider the length and nature of the treatment relationship, the support provided in a medical opinion, the medical opinion's consistency with the record, and the specialization of the physician. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Hearn v.*

*Comm'r, Soc. Sec. Admin.*, 619 Fed. App'x 892, 895 (11th Cir. 2015).  The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  Furthermore, a treating physician's opinion "need not be given substantial weight when there is 'good cause' to the contrary, meaning that the opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Hearn*, 619 Fed. App'x at 895.  Medical opinions can contribute to an ALJ's decision; to be sure, however, it is the Commissioner, not a physician, who has the final responsibility to decide whether an individual meets the statutory definition of disability. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Here, the ALJ gave partial weight to Dr. Born's November 14, 2012 RFC evaluation. (R. 49).  The ALJ noted that Dr. Born's belief that Plaintiff can lift and carry up to ten pounds was consistent with other evidence. *Id.*  On the other hand, instead of deferring to Dr. Born's opinion that Plaintiff can reach overhead frequently, the ALJ concluded that Plaintiff is even more limited in her ability to reach overhead. *Id.*  The ALJ also correctly stated that Dr. Born's opinion that Plaintiff could no longer perform past work is an opinion reserved for the Commissioner and, accordingly, Dr. Born's opinion on Plaintiff's ability to perform past work is not entitled to deference. *Id.*  Additionally, Dr. Born's opinion expressed in his 2012 RFC evaluation is simply not echoed in his treatment notes between January 2009 and September 2009, the relevant timeframe for this disability decision.  For instance, although Dr. Born wrote that Plaintiff "cannot stand for longer than one hour" in his 2012 evaluation (R. 277), on January 8, 2009, Dr. Born noted that Plaintiff was "on her feet all day." (R. 354).  Although Dr. Born remarked that

Plaintiff's "medications have not proven adequate treatment" in 2012 (R. 277), on May 5, 2009, Dr. Born stated that Plaintiff was "stable" and "on a regimen that seems to be helping." (R. 352).

The ALJ thoroughly examined Dr. Born's treatment notes concerning Plaintiff (R. 47-49) and provided good cause when explaining the weight she accorded to Dr. Born's opinions. (R. 49).  Therefore, the Appeals Council did not err in declining to review Plaintiff's claim.

### C. The ALJ Protected the Rights of Plaintiff by Obtaining Proper Waiver of Representation from Plaintiff And Developed a Full and Fair Record.

Plaintiff argues that the ALJ failed to protect the rights of a *pro se* claimant and to obtain and consider a full and fair record. (Pl.'s Mem. 26-30). This court finds just the opposite to be true.

### 1. Plaintiff Waived Her Right to Counsel.

Plaintiff has correctly stated the rule of law which applies to a *pro se* claimant's statutory right to be represented by council and to be informed of this right:

> Social Security claimants have a statutory right to be represented by counsel at a hearing before an ALJ. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Under 42 U.S.C. § 406, a claimant must be notified in writing of his right to counsel, and the possibility of obtaining representation by organizations which provide legal services free of charge. 42 U.S.C. § 406(c). A claimant may waive his right to counsel. However, to be effective "such a waiver must establish, at some point, that the claimant is 'properly apprised of his options concerning representation.'" *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982) (quoting *Peppers v. Schweiker*, 654 F.2d 369, 371 (5th Cir. 1981)). Where the notice of the right to representation fails to inform the claimant fully as to the possibility of free counsel and that attorney fees are limited to twenty-five percent of any eventual award, declining representation cannot be construed as an informed and knowing waiver. *Smith*, 677 F.2d at 829.

(Pl.'s Mem. 27) (citing *Beyser v. Astrue*, 2012 WL 1747494 (N.D. Ala. May 10, 2012). However, Plaintiff fails to note that multiple times throughout the hearing Plaintiff was clearly and properly informed of her right to counsel. (R. 59-60, 166, 171, 172-178, 186-187, 196).

Prior to the February 1, 2013 hearing, Plaintiff received at least four written notices from the Social Security Administration documenting Plaintiff's right to counsel. (R. 166, 171, 172-178, 186-187).  Three of these notices -- sent in October 2011, January 2012, and November 2012 -- detail Plaintiff's right to representation, the availability of free or low-cost representation, and that fees for representation are limited to twenty-five percent of past-due benefits. (R. 166, 172-178, 186-187).  Plaintiff acknowledged that she understood that she had a right to representation on December 28, 2011 and did so again (a few times) on February 1, 2013. (R. 60, 171, 196).

In fact, on February 1, 2013, Plaintiff signed a Waiver of Right to Representation, which specifically noted that if Plaintiff hired a representative, "the representative may be paid directly from your past due benefits, either 25% of your past due benefits or $6,000, whichever is less." (R. 196).  On this waiver, Plaintiff specifically identified that she was "able to read and understand" this form, did not have any questions regarding the waiver, understood her right to be represented, understood the "benefits and disadvantages of a representative," understood "how a representative would be paid," and wished "to proceed with the hearing today without representation." *Id.*  Plaintiff again acknowledged her right to representation and waiver of this right during the hearing. (R. 60).  The ALJ confirmed that Plaintiff understood that (1) "[a] representative can help [Plaintiff] obtain information about [her] claim, explain medical terms, help protect [her] rights and make any requests or give any notice about the proceeding," (2) "[t]he representative may not charge a fee or receive a fee" without the ALJ's approval, and (3) "[s]ome legal organizations offer legal representation free of charge." *Id.*  Accordingly, sufficient evidence illustrates the Plaintiff was aware and appropriately informed of her right to representation and waived that right.

### 2. The ALJ Developed a Full and Fair Record.

The ALJ has a duty to "investigate the facts and develop arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). Furthermore, before making a determination that a claimant is not disabled, the ALJ is required to develop a claimant's "complete medical history for at least the 12 months preceding the month" the claimant filed her application for disability "unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 416.912(d). The claimant, nevertheless, bears the burden of proving that she is disabled and is responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. § 416.912(a).

When a claimant is unrepresented and has not waived her right to counsel, the ALJ's duty rises to a special duty to ensure that Plaintiff was not prejudiced by the lack of counsel. *Brown*, 44 F.3d at 934; *Smith*, 667 F.2d at 829. However, the ALJ's special duty to develop the record does not take effect when counsel has been waived. *Robinson v. Astrue*, 235 Fed. App'x. 725, 727 (11th Cir. 2007). As discussed above, Plaintiff unequivocally waived her right to representation. (R. 60, 196). Thus, the ALJ's duty to develop a full and complete record did not rise to the special duty owed to unrepresented claimants who have not waived such a right. *See Robinson*, 235 Fed. App'x. at 727.

Plaintiff alleges that the ALJ failed to obtain and consider 2003 and 2004 medical records from Georgia Pain Physicians. (Pl.'s Mem. 28). But these medical records are well outside the twelve month period preceding Plaintiff's September 2011 filing date. (R. 197). Considering that Plaintiff was able to work from 2007 through January 2009 (R. 226), a time period after her medical difficulties in 2003 and 2004, the ALJ had no reason to believe that obtaining additional 2003 and 2004 medical records was necessary to fully develop the record. *See* 20 C.F.R. §§

16

404.1520(b), 416.912(d).   In fact, the ALJ considered September 2004 treatment notes from Georgia Pain Physicians (R. 298-302), along with 2003 and 2004 treatment notes from Atlanta Neurological and Spine Institute (R. 303-321). (R. 47).   As previously noted, the supplemental treatment notes from Georgia Pain Physicians that Plaintiff believes the ALJ should have obtained and considered add little to the record that the ALJ considered. (R. 47, 298-321).   In addition, the ALJ properly developed the record by questioning Plaintiff about the conditions which kept her from working and asking Plaintiff if she wanted to cover any additional medical problems. (R. 64-69).   As such, the record does not contain evidentiary gaps that illustrate unfairness or clear prejudice to Plaintiff. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

### D.   The ALJ Gave Proper Weight to Plaintiff's Subjective Testimony and Properly Considered Plaintiff's Claims.

Plaintiff also alleges that the ALJ failed to utilize the proper pain standard and failed to state adequate reasons for finding Plaintiff not credible. (Pl.'s Mem. 30).   Plaintiff's claim is without merit.   The ALJ articulated several valid reasons which support her decision not to credit Plaintiff's subjective pain testimony. (R. 49).

An ALJ must rely upon substantial evidence in discrediting a claimant's subjective pain testimony.[1]   *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).   When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); SSR 96-7p, 61 Fed. Reg. 34, 483-01 (July 2, 1996); *see also Wilson v. Barnhart*, 284 F.3d

---

[1] If an ALJ fails to do so, then that ALJ, as a matter of law, has accepted the claimant's subjective pain testimony as true. *Id.*

1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms, but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 404.1529(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-1226.   In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ cited inconsistencies between Plaintiff's testimony and the medical evidence (including Plaintiff's own statements) in the record. (R. 49).   Plaintiff's statements regarding her walking limitations vary throughout the record. *Id.* For example, on October 18, 2011, Plaintiff wrote that she was able to walk fifty to one hundred feed "only with medication." (R. 239).   However, in September 2012, Plaintiff told Dr. Iyer that walking does not bother her (R. 370), and Dr. Iyer accordingly found that Plaintiff had no walking limitations. (R. 372).   In addition, on January 8, 2009, Plaintiff told Dr. Born that she was "on her feet all day." (R. 354).

The ALJ found that the objective evidence did not indicate that Plaintiff's neck and back pain were as severe as alleged. (R. 49).   An MRI of Plaintiff's lumbar spine in 2004 revealed a mild disc desiccation that did not warrant surgical intervention and no cord or nerve root compromise. (R. 309, 315-316).   A 2012 MRI of Plaintiff's cervical spine showed no significant abnormalities.   (R. 372, 418).   Additionally, Dr. Born's treatment notes of Plaintiff often stated that Plaintiff was in a stable condition or showing signs of improvement. (R. 335-337, 339-340, 342, 344, 348, 350, 352, 355, 357, 362, 364, 366).   Further, Dr. Born's RFC form indicated that

18

there was no objective medical reason for Plaintiff's pain. (R. 280).  In September 2012, Dr. Iyer noted that Plaintiff had full range of motion of the neck, shoulders, elbows, wrists, hips, knees, and ankles, and, although Plaintiff was tender around the lumbar spine, she had full range of motion of the spine. (R. 371).

Substantial evidence supports the ALJ's conclusion that Plaintiff was not fully credible. (R. 49).  As such, this court will not disturb the ALJ's clearly articulated finding. *See, e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (explaining that when the ALJ's determination is based on substantial evidence, a court should uphold that decision); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (same).

### E.     The ALJ Based Her Decision on Substantial Evidence, Even When Considering Plaintiff's New Evidence Submitted to the Appeals Council.

In a single sentence, Plaintiff contends that that the ALJ's decision is not supported by substantial evidence when the evidence submitted to the Appeals Council is considered. (Pl.'s Mem. 33; Pl.'s Reply Br. 10).  Plaintiff's assertions in support of this contention focus on the weight accorded to treating physicians, but they do not otherwise substantiate Plaintiff's broad statement that substantial evidence does not support the ALJ's decision. (Pl.'s Mem. 33-34; Pl.'s Reply Br. 10-11).  Therefore, Plaintiff has "simply stat[ed] that an issue exists, without further argument or discussion, [which] constitutes abandonment of that issue . . . ." *Singh v. United States*, 561 F.3d 1275, 1278 (11th Cir. 2009).  Even still, any assertion that the ALJ's decision is not based on substantial evidence misses the mark.

When additional evidence is properly submitted to the Appeals Council, a reviewing court considers the record as a whole, including this additional evidence, to determine whether the ALJ's findings are supported by substantial evidence. *See Ingram*, 496 F.3d at 1266.  As previously discussed, the new evidence Plaintiff submitted to the Appeals Council is immaterial

to the narrow January 2009 through September 2009 timeframe that Plaintiff alleges disability. Further, the record as a whole supports the ALJ's finding that Plaintiff was not under a disability between January 4, 2009, and September 30, 2009.  At points throughout this limited timeframe, Plaintiff's medical records from her treating physician, Dr. Born, convey that Plaintiff was "on her feet all day" (R. 354), in a "stable" condition (R. 350, 352), and "on a regimen that seems to be helping." (R. 352).

Similarly, submission of evidence in the record that predates Plaintiff's January 4, 2009 alleged disability onset date and postdates Plaintiff's last insured date of September 30, 2009 does not uphold the Plaintiff's burden in establishing her disability. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) ("The burden is primarily on the claimant to prove that he is disabled . . . .") (citing 20 C.F.R. § 404.1512(a)).  In September 2004, Plaintiff was diagnosed with lumbar discogenic pain and lumbar spinal stenosis; however, at the same time, the physician noted that Plaintiff was "in no acute distress." (R. 298-299).  In September 2007, Dr. Born indicated that Plaintiff was "stable" and "happy." (R. 366).  Other treatment notes from Dr. Born in 2007 and 2008 state that Plaintiff was showing signs of improvement or in a stable condition, despite her neck and back pain. (R. 355, 357-359, 362, 364).  Following Plaintiff's last insured date (in September 2009), various 2009, 2010, and 2011 medical records from Dr. Born indicate signs of improvement or eased pain. (R. 335, 337, 339, 342-344, 348).   In addition, Dr. Iyer found that Plaintiff had full range of motion of the neck, shoulders, elbows, wrists, hips, knees, ankles, and spine in September 2012. (R. 371).

Considering the record in its entirety, the court easily concludes substantial evidence supports the ALJ's findings.  *See* 42 U.S.C. § 405(g); *Martin*, 894 F.2d at 1529.

**F.      The ALJ's RFC Finding Is Supported by Substantial Evidence.**

Finally, Plaintiff argues that the ALJ's RFC assessment was "conclusory and does not contain any rationale or reference to the supporting evidence." (Pl.'s Mem. 34).   The court disagrees.  The ALJ pointed to substantial evidence in support of her RFC finding.  (R. 46-50).

The ALJ has the authority to determine a claimant's RFC and should consider all of the relevant evidence of a claimant's ability to work despite her impairments. 20 C.F.R. § 404.1546; *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ's RFC finding must be supported by substantial evidence. *See Lewis*, 125 F.3d at 1441.  In this case, the ALJ began her RFC analysis by considering the Plaintiff's subjective statements and the credibility of these statements. (R. 46-47).   As previously discussed, the ALJ relied upon substantial evidence in doing so, including Plaintiff's testimony which is inconsistent with her own previous statements and the objective evidence included in the record.  This (and other) substantial evidence supports the ALJ's finding that Plaintiff's allegations and testimony were not fully credible. (R. 47-49).

Next, the ALJ considered the medical opinions of Dr. Born and Dr. Iyer. (R.49-50).  In some instances, the ALJ found that Plaintiff had an even more limited RFC than each of these doctors opined, thereby giving Plaintiff the benefit of the doubt. *Id.*  For instance, although Dr. Born noted that Plaintiff could reach overhead frequently (R. 278), the ALJ found that Plaintiff "can never reach overhead." (R. 46, 49).  Additionally, although Dr. Iyer indicated that Plaintiff "does not have limitation of functions involving sitting, standing, [and] walking," (R. 372), the ALJ found that Plaintiff has some functional limitations in these areas. (R. 50).  Overall, the ALJ thoroughly considered the record when making her RFC determination and substantial evidence supports her findings. (R. 46-50).

## VII.    Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 22, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE